J-S01017-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| SUKORI L. BUTLER | : | |
| Appellant | : | No. 711 MDA 2020 |

Appeal from the Judgment of Sentence Entered March 25, 2020
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-CR-0001337-2019

BEFORE:   LAZARUS, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.:         **FILED: MAY 11, 2021**

Sukori L. Butler (Appellant) appeals from the judgment of sentence entered in the Schuylkill County Court of Common Pleas, following his jury convictions of two counts of simple assault and one count each of harassment, strangulation, and disorderly conduct.[1]  Appellant argues his convictions of simple assault should have merged with strangulation for sentencing purposes.  We conclude 42 Pa.C.S.A. § 9765 does not support merger of these offenses, and thus affirm.

Appellant and Stephanie Torres (the Victim) were in a romantic relationship.  The trial court summarized the trial evidence as follows:

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2701(a)(1), 2709(a)(1), 2718(a)(1), 5503(a)(1).

September 17[,] 2018, [the Victim and Appellant] were in an argument that left [the Victim] physically injured. [O]n September 16th,[2 Appellant] had been accusing [the Victim] of cheating on him. This continued into later in the day when [Appellant] was not home and was sending [the Victim] text messages calling her derogatory names. On his way back to the apartment, [Appellant] asked [the Victim] to unlock the door[, but the Victim] refused. At this point, [the Victim] called her friend Linda Collins. Eventually, [Appellant] got into the house and went up to [the Victim's] bedroom and continued to yell at her.

After [Appellant] came into the bedroom, he started pulling [the Victim] off the bed. Once [the Victim] was halfway off the bed, [Appellant] got on top of her and started choking her. [The Victim's] ten-year old daughter, [N.T.], testified she saw [Appellant choking the Victim] while [the Victim's] body was half on the bed and her legs were on the floor. Once [the Victim] was on the floor, [Appellant] got back on top of [her] and began to strangle her again. During this second time, [Appellant] ended up scratching [the Victim] on her neck while she was trying to get away from him. While [Appellant and the Victim] were struggling, [Collins] started calling [Appellant's] name from outside.

[The Victim] ran down to see [Collins] and the argument continued in [Collins'] presence. [Appellant] pushed [the Victim] against a door at one point, in which she hit her head against the door. The argument continued outside as [the Victim] tried to get away from [Appellant. Appellant] followed her, continued to call her derogatory names while threatening her life, and punched her in the face. While they were outside, [the Victim] was able to get into [Collins'] car, but [Appellant] had followed and ended up in the backseat. While in the car, [Appellant] grabbed [the Victim] by her hair and pulled it back. [The Victim] was able to break away and started running. While she was running, [Appellant] came up behind [the Victim] and wrapped his one arm around her neck, wrapped his other arm around her mouth, and again threatened to kill her. [The Victim] testified that [when]

_____

[2] It is unclear what time the argument between Appellant and the Victim started on September 16, 2018. We note the victim's daughter, N.T., testified that it was "late" and she was "trying to go to sleep[.]" N.T. Jury Trial, 2/3/20, at 97.

[Appellant] did this, she could not breathe. While this was happening, one of [Appellant's] friends pulled up in a car and stopped to see what was happening. At this moment, [Appellant] released [the Victim] and got into his friend's car.

The neighbor who lived across the street . . . Victoria Kechula, testified that she heard people fighting and looked out to see [the Victim, Collins, and Appellant. Kechula] heard [the Victim] screaming that [Appellant] was going to kill her, take her baby, and [Kechula] saw [the Victim and Appellant] scuffing. Eventually, [Kechula] called the police and took in [the Victim's] children until the police arrived. [Pine Grove Police Officer Tyler] Dissinger and his partner arrived on scene. Officer Dissinger testified that he observed bruises, redness, and open scratches on [the Victim's] neck. He also observed what appeared to be an injury above her eye and her [clothing's] collar was stretched and ripped.

Trial Ct. Op. 6/16/20, at 2-3. The Victim stated the incident "was done with" by 3:17 a.m., when she took a photo of her injuries. N.T. Jury Trial, at 59.

Appellant was charged with two counts of simple assault and one count each of strangulation, harassment, and disorderly conduct. The case proceeded to a jury trial on February 3, 2020. The Commonwealth presented the testimony of the Victim, her daughter N.T., the neighbor Kechula, and Officer Dissinger, as summarized above. Collins testified, as a defense witness, that she did not witness any "physical action" between the Victim and Appellant. N.T. Jury Trial, at 123. Appellant did not testify or present any additional evidence. The jury found Appellant guilty of all charges.

On March 25, 2020, the trial court sentenced Appellant to three to six years' incarceration for strangulation. It also imposed terms of 9 to 24 month's incarceration for each count of simple assault, to be served concurrently, and no further penalty on Appellant's conviction of disorderly

conduct. The court found Appellant's harassment charge merged with his first count of simple assault.

Appellant filed a timely post-sentence motion, claiming "the simple assault convictions must merge with strangulation for sentencing purposes." Appellant's Post-Sentence Motion, 4/3/20, at 3 (unpaginated). Before the trial court ruled on the motion, Appellant filed a notice of appeal on April 21, 2020. The following day, April 22nd, the trial court denied Appellant's post-sentence motion.[3] Appellant timely complied with the trial court's order directing him to file a concise statement of matters complained of on appeal pursuant to Pa. R.A.P. 1925(b).

Appellant raises two issues for our review:

---

[3] We decline to find Appellant's notice of appeal, filed one day before the trial court denied his post-sentence motion, was untimely. **See** Pa.R.A.P. 903(a); (notice of appeal must be filed within 30 days of the entry of the order appealed from); Pa.R.Crim.P. 720(A)(2)(a) ("If the defendant files a timely post-sentence motion, the notice of appeal shall be filed . . . within 30 days of the entry of the order deciding the motion."). In **Commonwealth v. Cooper**, 27 A.3d 994 (Pa. 2011), our Supreme Court held that a "snap" *pro se* notice of appeal did not divest the trial court of jurisdiction to act upon a subsequently filed, counseled, timely post-sentence motion, and instead, the premature appeal should have been treated as if it were filed after the denial of post-sentence motions in accordance with Pa.R.A.P. 905(a)(5).[3] **Cooper**, 27 A.2d at 1008. **See** Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof."). In the instant matter, the notice of appeal was filed by counsel while the post-sentence motions were pending, making it premature. However, the trial court denied the post- sentence motion on April 22, 2020. Thus, we conclude the notice of appeal was timely filed in accordance with Pa.R.A.P. 905(a)(5).

- 4 -

1. Did the court err in failing to merge the sentence for simple assault with the sentence for strangulation?

2. Was the prosecution's evidence insufficient to support a conviction for strangulation?

Appellant's Brief at 4.

In his first issue, Appellant argues the trial court erred when it did not merge his sentences for simple assault, under 18 Pa.C.S. § 2701(a)(1), and strangulation.[4]  Appellant's Brief at 10.  Appellant contends that "both the strangulation and the simple assault charges are based upon the specific allegations of [A]ppellant putting his hands around the neck and choking [the Victim until she was] unable to breath[e]."  *Id.* at 11.  Appellant maintains "[n]othing is required to prove strangulation beyond the allegations alleged for the charge of simple assault in the criminal information."  *Id.*  While Appellant cites 42 Pa.C.S. § 9765 (discussed *infra*), he argues the criminal complaint "clearly" states both the strangulation and simple assault arose from the same act and "the complaint does not allege criminal acts delineating the simple assault from the conduct that constituted strangulation."  *Id.* at 12.

Our standard of review on this matter is well settled:

---

[4] Appellant states the trial court sentenced him to "**consecutive** sentences on strangulation and simple assault."  Appellant's Brief at 11 (emphasis added).  However, in the sentencing order and at the sentencing hearing, the court specified it sentenced Appellant to **concurrent** sentences on strangulation and simple assault.  N.T. Sentencing, 3/25/20, at 11; Sentencing Order, 3/25/20.

A claim that crimes should have merged for sentencing purposes raises a challenge to the legality of the sentence. Therefore, our standard of review is *de novo* and our scope of review is plenary.

*Commonwealth v. Martinez*, 153 A.3d 1025, 1029-30 (Pa. Super. 2016) (citations omitted).

Section 9765, which governs merger of offenses, provides:

**§ 9765 Merger of sentences**

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765.

Our Supreme Court has held that Section 9765 "prohibits the merger of sentences unless a strict two-part test is met. First, the convictions must be based on a single criminal act. Second, all of the statutory elements of one of the offenses must be included in the statutory elements of the other."

*Commonwealth v. Wade*, 33 A.3d 108, 116 (Pa. Super 2011). To determine if the crimes arise from a single criminal act, we must look to the following:

> [T]he question is not "whether there was a 'break in the chain' of criminal activity." The issue is whether "the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, then the actor will be guilty of multiple crimes which do not merge for sentencing purposes."
>
> In determining whether two or more convictions arose from a single criminal act for purposes of sentencing, we must examine the charging documents filed by the Commonwealth. *Commonwealth v. Jenkins*, 96 A.3d 1055, 1060 (Pa. Super. 2014) (holding, consistent with our Supreme Court's jurisprudence, "We must determine whether [defendant's] actions

. . . constituted a single criminal act, with reference to elements of the crime as charged by the Commonwealth.")

*Martinez*, 153 A.3d at 1030-31 (some citations omitted).

Appellant was convicted of simple assault under the following subsection:

**(a) Offense defined —** Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:

**(1)** attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]

*See* 18 Pa.C.S. § 2701(a)(1). Appellant was also convicted of strangulation under the following subsection:

**§ 2718. Strangulation**

**(a) Offense defined.—** A person commits the offense of strangulation if the person knowingly or intentionally impedes the breathing or circulation of the blood of another person by:

**(1)** applying pressure to the throat or neck[.]

18 Pa.C.S. § 2718(a)(1).

First, we address whether the charges at issue arise from a single criminal act. Upon review of the charging documents, we agree with the trial court's determination that the simple assault and strangulation charges were based on separate acts. *See* Trial Ct. Op. at 6. The criminal **information** stated Appellant committed the offense of strangulation when he "did knowingly or intentionally impede the breathing [ ] of another person[.]"

Criminal Information 8/26/19.[5]   However, the information stated Appellant committed simple assault under Subsection 2701(a)(1) when he "cause[d] bodily injury to" the Victim.  *Id.*  Furthermore, we note that while the criminal **complaint** alleged Appellant's "putting his hands around [the Victim's] neck[,] choking her[, and] causing her to not be able to breath[,]" established both simple assault and strangulation, the complaint further averred Appellant committed simple assault when he left "red marks and visible scratches" on the Victim.  Criminal Complaint 9/17/18, at 2.  Officer Dissinger's affidavit of probable cause (APC) specified Appellant was "choking" the Victim after dragging her off a bed in their shared home, "punched [the Victim] in her face" after she ran outside to "her friend[']s" vehicle, "grabbed [the Victim's ] hair" while she was inside the vehicle, and "grabbed [the Victim] by the face" after she exited the vehicle and attempted to run down the street.  APC 9/17/18, at 1-2.  We thus reject Appellant's argument that the charging documents established only one criminal act.  *See Martinez*, 153 A.3d at 1030-31; *Wade*, 33 A.3d at 116.  *See also Kimmel*, 125 A.3d at 1277.

Additionally, Appellant has failed to address whether "all of the statutory elements of one offense are included in the statutory elements of the other offense" as required by the merger statute.  *See* 42 Pa.C.S. § 9765.  We conclude they do not.  Simple assault under Subsection 2701(a)(1) and

---

[5] The Criminal Information was filed on August 26, 2019.  However, it is unclear when it was prepared.

strangulation each contain an element the other does not possess. Simple assault includes "attempt[ing] to cause or intentionally, knowingly or recklessly caus[ing] bodily injury to another," whereas strangulation includes "knowingly or intentionally imped[ing] the breathing or circulation of the blood" **and** "applying pressure to the throat or neck[.]" **See** 18 Pa.C.S. §§ 2701(a)(1), 2718(a)(1); 42 Pa.C.S. § 9765; **Wade**, 33 A.3d at 116.

Appellant's second issue in his statement of questions involved is a challenge to the sufficiency of evidence for his strangulation conviction. Appellant's Brief at 4. However, Appellant abandons this issue in the argument section of his brief. **See id.** at 12 ("Counsel for [A]ppellant, upon review of the existing case law, did not find any argument to support this issue. Therefore, no argument will be offered."). In any event, we note that the trial court found the testimony of the Victim, witnesses, and Officer Dissinger, establishing the elements of each crime, was credible. Trial Ct. Op. at 7.

Because Appellant failed to meet the two-part merger test as outlined in Section 9765 and offers no argument on his sufficiency claim, we conclude no relief is due.

Judgement of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 05/11/2021